IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 07-CR-30179-DRH |
| | ) | |
| CARL A. COURTRIGHT III, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S TRIAL BRIEF

Comes now A. Courtney Cox, United States Attorney for the Southern District of Illinois,

Nicole E. Gorovsky, Assistant United States Attorney for said District, and James Silver, Trial

Attorney, and submits the following Trial Memorandum for use in the trial of the above-styled

cause:

**A.      VIOLATIONS ALLEGED IN THE INDICTMENT**

1.      Charges and Elements

The Superseding indictment in this case filed on February 18, 2008, charges the defendant

as follows:

**COUNT 1: Production of Child Pornography** in violation of Title 18, United States Code,

Section 2251(a).  Said offense occurred after a prior qualifying conviction, in further violation of

Title 18, United States Code, Sections 2260A, and 3559(e)(1).

Elements:

| | | |
|---|---|---|
| First: | | In or about the time period alleged in the indictment, Jane Doe #1, referenced in the Count was under the age of 18; |
| Second: | | The defendant used, persuaded, induced, enticed, or coerced Jane Doe #1 to engage in sexually explicit conduct; |

Third:       The defendant voluntarily and intentionally did this for the purpose of causing the production of a visual depiction of such conduct; and

Fourth:      The materials used to produce the visual depictions were mailed, shipped, and transported in interstate and/or foreign commerce.

**COUNTS 2 and 3:  Possession of Child Pornography** in violation of Title 18, United States Code, Section 2252(a)(4)(B).  Said offense occurred after a prior qualifying conviction, in further violation of Title 18, United States Code, Section 2252(b)(2).

Elements:

First:       On or about the date alleged in the Indictment, the Defendant knowingly possessed an item or items of child pornography;

Second:      That such items of child pornography had been transported, shipped or mailed in interstate or foreign commerce, including by computer, as charged or were produced using materials that have been mailed, shipped, or transported in interstate commerce

Third:       That at the time of such possession the defendant believed that such items constituted or contained child pornography, as hereafter defined.

**COUNT 4:  Receipt of Child Pornography** in violation of Title 18, United States Code, Section 2252(a)(2).

Elements:

First:       The defendant knowingly received a visual depiction;

Second:      Such visual depiction was shipped or transported in interstate or foreign commerce, or contains materials that had been mailed or shipped or transported in interstate or foreign commerce, by any means including computer;

Third:       That the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

| | |
|---|---|
| Fourth: | Such visual depiction is of a minor engaged in sexually explicit conduct; and |
| Fifth: | The defendant knew that at least one of the performers in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct. |

**COUNT 5:  Bank Fraud** in violation of Title 18, United States Code, Section 1344.

Elements:

| | |
|---|---|
| First: | That there was a scheme to defraud a bank by means of false or fraudulent pretenses, representations or promises; |
| Second: | That the defendant executed the scheme; |
| Third: | That the defendant did so knowingly and with the intent to defraud; and |
| Fourth: | That at the time of the charged offense the deposits of the bank were insured by the Federal Deposit Insurance Corporation. |

**COUNT 6:  Forfeiture of Computer Equipment**  in violation of Title 18, United States Code, Section 2253(a)(3).

**COUNT 7:  Forfeiture of Proceeds**  pursuant to Title 18, United States Code, Section 982(a)(2)(A).

**B.**     **DEFINITIONS**

1.     Child Advocacy Center

Child Advocacy Centers are neutral, safe locations where multi disciplinary teams investigate disclosures of child sexual or severe physical abuse.  These multi-disciplinary teams are made up of law enforcement officers, child protective service personnel, prosecutors, and advocates. Children who have disclosed abuse are interviewed by a forensic interviewer at such centers.  These

3

forensic interviewers are trained in techniques aimed at asking children questions about abuse in a non-threatening and non-suggestive manner.  The multi disciplinary approach to child abuse investigations is designed with the intention of reducing the secondary trauma associated with the disclosure and subsequent investigation of abuse.

2.   Child Grooming

The deliberate actions taken by an adult to form a trusting relationship with a child, with the intent of later having sexual contact, are known as child grooming.  The act of grooming a child sexually may include activities that are legal in and of themselves, but later lead to sexual contact. Typically, this is done to gain the child's trust as well as the trust of those responsible for the child's well-being.

3.   EXIF Data

EXIF stands for 'Exchangeable Image File' data and it is the information that your camera stores as "metadata" with your image file that tells you about it.  It is stored when you take images in JPEG format (or TIFF format).  Almost all camera manufacturers support EXIF and whether you know it or not your camera is likely to be recording it with your image file.

4.   FTK and Encase

FTK stands for Forensic Tool Kit and is a computer program that investigators use to scan a hard drive for contraband.  The program can crack or defeat encryption and locate deleted files. Encase is a different proprietor's version of the same type of software.

5.   Limewire

A popular peer-to-peer network for trading files.  It is a common place to trade child pornography.  Users can search the Limewire database for files containing key words, and they can

also offer their own files with file names showing for download by other users who do key word searches. Limewire users often have a "shared folder" on their computer when they use Limewire which allows other users of the program to download files from that designated folder.

6.      Minor

"Minor" means any person under the age of eighteen years.  18 U.S.C. § 2256(1).

7.      Myspace.com

A social networking site where users, often minors, post personal information and meet others.

8.      Producing

"Producing" means producing, directing, manufacturing, issuing, publishing, or advertising. 18 U.S.C. §2256(3).

9.      Visual Depiction

"Visual Depiction" includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.  18 U.S.C. 2267(5).

10.     Internet Protocol Address (IP)

An IP address is a unique number, such as 128.201.86.290, that identifies each computer on the internet.

When a computer is configured to use the same IP address each time it powers up, this is known as a *Static IP address*.  In contrast, in situations when the computer is assigned a new IP address each time it powers up, it is known as a *Dynamic IP address.*

11.     Receipt

The common Oxford English Dictionary definition of the word "receive" is: "to take into

one's possession; to take delivery of." See United States v. Mohrbacher, 182 F. 3d 1041, 1048 (9th Cir. 1999); BLACK'S LAW DICTIONARY 1268 (6th ed. 1990)('To take into possession and control; accept custody of; collect.').  Id.

"An individual who downloads material takes possession or accepts delivery of the visual image; he has therefore certainly received it.  In fact, guides to computer terminology often analogize downloading to receiving information and uploading to transmitting or sending." Mohrbacher, 182 F. 3d 1041, 1048 (9th Cir. 1999) (emphasis added).

A customer of those who make such visual depictions available who is simply on the receiving end and who downloads an image that has been made available through an automated, pre-configured process or that has been sent by another computer user, is guilty of receiving or possession of such material.  Id., at 1050.

12.  Thumbnails

Thumbnails are reduced-size versions of pictures, used to help in recognizing and organizing them, serving the same role for images as a normal text index does for words.  For example, when a person plays a video on their computer using Windows Media Player (a commonly used program to play video files on the computer), the computer places a Thumbnail version of the first screen shot of the video on the hard drive so that the user can reference the video later.

C.  **STATEMENT OF THE CASE**

On May 18, 2007, the Illinois Attorney General's Office served a subpoena on Myspace.com to learn if any Illinois registered sex offenders were users of the website.  The defendant was a registered sex offender and agents learned that he maintained a Myspace account.  From the Myspace company, agents learned the IP address that the defendant had used when he registered his

account there.  Agents then entered that IP address into a database which maintained records on IP addresses which had offered child pornography for download on the internet in the past.  They found that on December 15, 2006, the IP address that was registered to the defendant's computer had offered child pornography for distribution on the internet through Limewire.  After learning this, officers applied for and received a warrant to search the defendant's house where he lived with his parents.

Upon searching the house, officers found multiple computers and equipment scattered throughout the home.  A forensic preview of the laptop found in the defendant's bedroom showed that there was child pornography on the computer that had been downloaded through Limewire.  The preview also revealed that the defendant had evidence of a bank fraud scheme on his computer.  He had numerous photos of various people with plain backgrounds behind them and several completed false identification cards.

During a brief interview at the defendant's home, the defendant stated that he was the sole Limewire user in the house, and of the laptop in his bedroom.  He denied that there would be any child pornography on his computer.

The defendant was interviewed further at the Granite City Police station, and after receiving *Miranda* warnings, he told agents that he watched "To Catch a Predator" on TV and was curious, so he may have searched key words related to child pornography on Limewire.  However, he noted, he did not double click on any child pornography files to download them.  He admitted doing this several times.  Later in the same interview, he admitted clicking on the files, but said that he deleted them instantly but sometimes it was hard to delete: "it's like a virus."  He confessed to doing this at least 20 times.  He further confessed to having multiple videos of Avril Livigne (a teen-age singer)

7

some of which show her bare chest; he said he is "hooked on her music." He was sure to mention that he does not have a sex drive because he has a tumor on his pituitary gland.

Further forensic analysis of the computers revealed that the defendant had one series of approximately eleven child pornography photos on his computer that looked like they were not downloaded from the internet. The EXIF data from the photographs showed that they were taken directly from a Hewlett Packard (HP) camera. The child depicted in these photos was not immediately identifiable because her face was not included in the shots. However, agents noticed that the child in the photographs had a band-aid on her neck. Agents also noticed that one of the manufactured identification photos showed a young teen-age girl from the mid torso up and she had a mole on her neck that was in the same location as the band-aid in the pornographic photos.

Agents eventually identified the girl in the pornographic HP photos. It was a child who was living with her father in the garage of a home that the defendant's parents owned. The defendant also kept a bedroom there. The girl was 14 years old at the time the photographs were taken. When agents went to her high school to talk with her, she broke down in tears at the mention of the defendant's name, and said "he's a bad, bad man."

At a Child Advocacy Center interview, the child said that the defendant told her that he knew a guy in California who would pay $500 for naked photos. She initially did not want to pose for the photographs, but she thought she needed the money. She told the defendant that she would have her girlfriend take the pictures and send them to the guy in California, but the defendant told her that he had to be the photographer.

Eventually the child agreed to pose for the photographs in a loft behind the defendant's house. As directed by the defendant, she sat on a green director's chair and posed in varying stages

8

of nudity.  The defendant told her that he wanted the photographs to look like a strip tease in sequence.  For the last photo, the defendant took the child's hands and placed them in her vagina to hold it open for the shot.  He also told her to spit on her vagina so she would look aroused.  The child told officers that the defendant put a band-aid over her mole she had on her neck to conceal her identity in the photographs.

Upon further discussion with the child, it became apparent that the defendant had been engaged in a grooming process with her prior to taking the photographs as he regularly carried her from the cold garage to his bedroom when she was asleep, and allowed her to use the house shower. He occasionally bought her gifts and spent time with her regularly.  He had progressed in his sexual aggression toward her by offering to rub lotion on her body and give her massages.

Police confronted the defendant with the information they learned from child.  He admitted to owning an HP camera.  However, he denied taking any naked photos of her.  He then claimed that she had one time asked to borrow his camera to take pornographic photographs, but that he had said no.  He had no explanation for how the photos would be on his computer.

In addition to the HP photographs, the forensic investigators found that the defendant had a significant collection of child pornography that he had downloaded from the internet and stored on his computer.  The computer information shows that at the same time the defendant downloaded or viewed much of the child pornography, he did other things on the computer that led agents to believe that he was the user.  For example, he often checked his online banking records, or his social networking site profile within minutes of looking at child pornography.

Because he was the person in the home with all of the computer knowledge, he used all of the computers in the home and they all had child pornography stored on them.  The different

9

computers involved are described in the chart below:

| COMPUTER | LOCATION IN HOME | FORENSIC REVIEWER | ILLEGAL CONTENT | HARD DRIVE | WHERE MADE |
|---|---|---|---|---|---|
| HP Media Center PC Tower SN:MXK6070 RHZ 2 hard drives in computer | Northwest Office | AGO - Haqquani | Newsgroups regarding CP | | Computer-stamped made in Mexico |
| Compaq Presario Laptop SN: CNF61215KN | Northwest office | Bazzel Goward | CP videos Fraud Images | Seagate Momentus 4200.2 SN: 3LF3717Q | Hard Drive - stamped made in Singapore |
| HP Pavillion Laptop - ZD7000 SN: CNF4190C5H | D's Bedroom | Vucich Goward | CP images Fraud S.J. Photos | Fujitsu SN: NN3LT313 14J3J | Hard Drive stamped - made in Thailand |
| Toshiba Laptop SN:17187183K | Kitchen | Wojtowicz | Fraud Images | Fujitsu SN: NZOMT71 2571D | |

Lastly, agents learned through forensics and interviews that the defendant was ordained as a minister by an online company that sells ordinations and Doctorates of Divinity.  He maintained a website for "Truth of God Ministries"  on the internet at www.truthofgodministries.org.  On the website, he represented that "Truth of God Ministries" had "been around since 1992," and was "an officially Chartered Church" which was an "outreach ministry that is supported solely on prayer and donations."

In addition to soliciting prayer requests on the website, Courtright solicited financial

contributions to the "Truth of God Ministries" which could be made at any Regions Bank to the care of "Truth of God Ministries." He opened a checking account at Regions Bank in the name of "Truth of God Ministries." Then, using various types of electronic equipment, including the computers listed above, he would and did falsify "donation" checks payable to the "Truth of God Ministries," and would then deposit the checks into the Truth of God Ministries account at Regions Bank.

Courtright would then withdraw the deposited money from the "Truth of God Ministries" account via ATM and Visa Checkcard transactions drawn on the account before Regions Bank determined that the checks were worthless. When contacted by Regions Bank about the bogus checks deposited into the "Truth of God Ministries" account, Courtright provided a letter to Regions Bank representing that the checks had been donations to the "Truth of God Ministries," by individuals who were living in shelters in Saint Louis, and that he was "quite confident that most of the deposits that were made, will clear, and have emergency plans if for some unknown reason, they don't." The letter was signed "Pastor Carl A. Courtright."

On March 13, 2007, the defendant attempted to deposit four counterfeit checks totaling $3,100.00 into the "Truth of God Ministries" account. The checks were forged to appear as if they came from certain corporations, and each of those corporations has either confirmed that they never wrote the checks, or does not exist. Many of the logos for these companies and false signature lines were found on the defendant's computers.

**D.    LEGAL ISSUES**

1.    Interstate Commerce

Count I, which accuses the defendant of producing child pornography under Title 18, United States Code, Section 2251(a), states that the interstate commerce element of the offense can be met

11

if  "...such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed."

In this case, the interstate nexus element of the Production Count will be proven by the fact that the defendant's computer hard drive which was used to produce the images was stamped "made in Thailand."  Moreover, business records will show that the physical computer was shipped in interstate commerce before reaching the defendant.  Lastly, forensic examinations showed that the images were taken with a Hewlett Packard computer, and a witness from Hewlett Packard will testify that no HP camera was ever manufactured in Illinois.

Counts 2, 3 and 4 which charge possession and receipt under Title 18, United States Code, Section 2252.  This section makes clear that the interstate nexus element of each violation is satisfied by proof that any image depicting child exploitation, or any instrument that was used to produce such image, traveled in interstate commerce, that is between state lines.  The statute also makes clear that travel accomplished by means of a computer will satisfy the required element.  See United States v. Schaffner, 258 F.3d 675 (7th Cir. 2001); see also United States v. Angle, 234 F.3d 326 (7th Cir. 2000).

Proof of transmission of pornography over the Internet or over telephone lines satisfies the interstate commerce element of the offense.  United States v. Hilton, 257 F. 3d 50, 54 (1st Cir. 2001).  Transmission of photographs by means of the Internet "is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce."  United States v.

Carroll, 105 F.3d 740, 742 (1st Cir. 1997); see also United States v. Kimler, 335 F.3d 1132, 1138 n.7 (10th Cir. 2003) (stating that even if the ultimate source of child pornography images is an intrastate distributor, a defendant's activity "would still be interstate if, as the evidence at trial established, he sent and received the images in interstate commerce over the internet").   In the present case, the Government will show that the defendant received images of child pornography from the internet and also used computers and hard drives that traveled in interstate commerce.

2.      Expert Testimony

A witness who is "qualified as an expert by knowledge, skill and experience" may present expert testimony if his or her specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.  Fed.R.Evid. 702;

Under Federal Rule of Evidence 702, David Vucich, Michael Bazzel, Kenneth Wojtowicz, Amber Haqquani, and Matthew Goward will testify to their forensic analysis of the computers at issue in this case, as well as various matters concerning digital transmissions by computer.  It is arguable whether all of this evidence is actually "expert testimony," in that most of these witnesses will be testifying to the factual results of their forensic investigations as opposed to giving opinions.  However, out of an abundance of caution, the Government has filed an expert notice including each of these witnesses and has provided the defense with their reports and curricula vitae.

3.      Computer Files In General

The standard for authenticating computer records is the same for authenticating other records and does not vary simply because the record happens to be originally in electronic form.  United States v. Vela, 673 F.2d 86, 90 (9th Cir. 1982).  The witness who testifies to the authenticity of the computer record need not have special qualifications and need not have programmed the computer

or even understand the technical operation of a computer.  United States v. Salgado, 250 F.3d 438, 453 (6th Cir. 2001) ("it is not necessary that the computer programmer testify in order to authenticate the computer generated records.")  Instead, the witness need only have first-hand knowledge of the facts to which they testify, such as examining or seizing the computer from which the records were obtained.  United States v. Whitaker, 127 F.3d 595, 601 (7th Cir. 1997).

The authenticity of the computer program itself is also generally not a bar to the admission of evidence derived from the use of such a program.  Such a challenge is defeated by providing sufficient facts to support a finding that the records are trustworthy and the opposing party is afforded the opportunity to inquire into the accuracy of such records.  United States v. Briscoe, 896 F.2d 1476 1494-95 (7th Cir. 1990).  Typically, the reliability of a computer program can be established by showing that the users of the program actually do rely upon it on a regular basis.  Id., at 1494 (holding that computerized records held by a telephone company were admissible).

In the present case, many witnesses will testify that computer programs (FTK or Encase) were utilized to retrieve much of the information found on a seized computer.   The FTK and EnCase programs are well known and are a generally accepted means of conducting a forensic examination of a computer for the purpose of retrieving evidence.  Considering the fact that defense experts commonly rely upon the same program, the government anticipates no objection to the use of FTK or EnCase in the present investigation.

4.     Sexually Explicit Conduct

"Sexually Explicit Conduct" means actual or simulated:

(I) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
(ii)  bestiality;
(iii) masturbation;

(iv) sadistic or masochistic abuse; or
(v) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. § 2256(2).

In determining whether a depiction includes Lascivious Exhibition of the Genital or Pubic Area of Any Person, the trier of fact may consider any of the following factors:

(1) Whether the focal point of the depiction is the child's genital or pubic area;
(2) Whether the setting of the depiction is sexually suggestive, for instance, the setting is in a place or pose generally associated with sexual activity;
(3) Whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child
(4) Whether the child is fully or partially clothed or is nude;
(5) Whether the depiction suggests sexual coyness or a willingness to engage in sexual activity;
(6) Whether the depiction is intended or designed to elicit a sexual response from the viewer.

Additionally, whether a depiction is lewd or lascivious should be viewed from the perspective of the photographer, not from the perspective of the minor being photographed.

5.    Images

The government intends to display images of child sexual exploitation that the defendant received from sources via the internet and some that he took himself that he stored on his computer. Some of the videos and still images depicting the sexual exploitation of minors are very graphic, and the government respectfully requests that the Court advise the prospective members of the jury of this during jury selection.

Given the very high burden of proof generally, and that the government will need to prove the defendant acted intentionally and knowingly in committing the charged offenses, and that the jury must view images in relation to community standards, the government should be given wide latitude in deciding what is an  appropriate number of images to be given to the jury.  Since the

government's burden is extremely high - as the defense will argue in its closing - the government should "not be restricted to a modest quantum of evidence that will support the indictment." United States v. Gallo, 543 F.2d 361, 365 (D.C. Cir. 1976).

6.      "Real Children"

Although the Government must prove that the images are child pornography, it need not present the child victim or expert testimony to show that the victim was a "real" minor.  The jury can determine whether "real" children are depicted in the images by reviewing the images. United States v. Sims, 428 F.3d 945, 956 (10th Cir. 2005); United States v. Slanina, 359 F.3d 356, 357 (5th Cir. 2004);

7.      Statements Offered by the Defendant

If the government chooses not to introduce statements made by the defendant, the defendant may not introduce those statements as they would be hearsay because they would not be offered by a party-opponent. Federal Rule of Evidence 801(d)(2).  "As we noted in *Dellinger,* the appropriate rule for barring the self-interested declarations of a party is actually the hearsay rule. 472 F.2d at 381 (quoting McCormick, Evidence, 1954 ed., p. 588).  Accordingly, such self-serving declarations are admissible only if they can be either characterized as non-hearsay or if they fall within one of the exceptions to the hearsay rule. *See* Fed.R.Evid. 801-804.  Since we conclude that the defendant's statements here are inadmissible hearsay, *see infra,* we find that the district court did not abuse its discretion in excluding them under the self-serving rubric. U.S. v. Jackson 780 F.2d 1305, 1314 (7th Cir. 1986).

16

8.      <u>Demonstrative Exhibits/Summaries and Charts</u>

The government may use one or more demonstrative exhibits to help explain various matters to the jury, including techniques used in analyzing the defendant's computer, the information recovered, and the significance of that information.  Should this type of demonstrative exhibit be used during testimony, it would not be provided to the jury during deliberations.

The government may introduce or use at trial summaries and charts.  The government may also use some of its charts and summaries during the opening statement, the presentation of its case in chief and/or during closing argument.  These charts and summaries will substantially assist the jury in understanding the government's proof in this case.

It is well-established that the trial court in its discretion may allow the presentation of summary evidence to guide and assist the jury in understanding and judging the factual controversy. <u>See</u> Fed.R.Evid. 1006; <u>United States v. Burt</u>, 495 F.3d 733 (7th Cir. 2007).  A foundation for the admission of each chart and summary will be laid through the testimony of various witnesses, who will testify that the charts and summaries accurately reflect information contained in documents already in or to be admitted into evidence.

9.      <u>Rights - Victim's sexual history</u>

Federal Rule of Evidence 412 prevents the admission of any evidence regarding the victim's sexual history in this case unless it relates to a prior false accusation of sexual assault.  Federal Rule of Evidence 412 provides:

(a)     Evidence generally inadmissible.
        The following evidence is not admissible in any civil or criminal
        proceedings involving alleged sexual misconduct except as provided
        in subdivisions (b) and (c):
        (1)     Evidence offered to prove that any alleged victim engaged in other
                sexual behavior.

(2)    Evidence offered to prove any alleged victim's sexual predisposition.

(b)    Exceptions.

(1)    In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:

(A)    evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;

(B)    evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and

(C)    evidence the exclusion of which would violate the constitutional rights of the defendant. . . .

(c)    Procedure to determine admissibility.

(1)    A party intending to offer evidence under subdivision (b) must:

(A)    file a written motion at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause shown, requires a different time for filing or permits filing during trial; and

(B)    serve the motion on all parties and notify the alleged victim or, when appropriate, the alleged victim's guardian or representative.

(2)    Before admitting evidence under this rule the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard.  The motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise.

Fed. R. Evid. 412.  The committee notes to Rule 412 further state:

The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact finding process.  By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.

Rule 412 seeks to achieve these objectives by barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence or for impeachment, except in designated circumstances in which the probative value of the evidence significantly outweighs possible harm to the victim.

Fed. R. Evid 412, Advisory Committee Notes.

18

10.    <u>Child Pornography in the Courtroom</u>

The Government anticipates that there will be a significant amount of child pornography offered into evidence in this case, and alerts the Court that it may wish to institute procedures for ensuring that the images are not shown to the gallery in the courtroom.

11.    <u>Stipulations</u>

To date, the parties have not entered into any stipulations, although the issues have been discussed in the interests of completing the case as efficiently as possible.  The parties will obviously advise the court of any stipulations before the trial begins.

12.    <u>Cross-Examination of Defendant's Character Witnesses</u>

The defendant may call character witnesses.  In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.

On cross-examination of the defendant's character witness, the government may inquire into specific instances of the defendant's past conduct relevant to the character trait at issue.  Fed.R.Evid. 405(a); <u>Michelson v. United States</u>, 335 U.S. 469, 479 (1948).  However, the defendant may not, on direct examination, ask about specific instances of conduct.  Fed.R.Evid. 405(a).

13.    <u>Reciprocal Discovery</u>

To date, the government has provided at least 737 pages of discovery to the defense.  Since the inception of this prosecution, the government has made available for the defense review all of the items of evidence, whether intended to be used as trial exhibits or not, over which the government has custody or control.

The government has requested reciprocal discovery on several occasions, but has received none.  Should the defendant seek to introduce any evidence that should have been provided to the

government as reciprocal discovery, the Court should exclude it under Rule 16(d)(2) of the Federal Rules of Criminal Procedure and its previous order.  That would be consistent with the court's ruling on the government's motion in limine on this issue.

14.     <u>Presentation of Witnesses</u>

It is possible that the government may have to call certain witnesses out of order, or re-call witnesses to testify to various events to maintain a chronological presentation.  The government will strive for an orderly presentation of the evidence to assist the jury, the court, and the defendant in understanding the evidence being presented.

**E.     POSSIBLE DEFENSES**

The defendant has not given notice of any defense for which the Federal Rules of Criminal Procedure require notice.  Therefore, the government would move to bar any such defense if it were raised during trial.  The court has ruled in response to the government's motion in limine on this issue that such defenses would be precluded.

**F.     WITNESS EXCLUSION AND CASE AGENT DESIGNATION**

The government will move for the exclusion of all witnesses until their testimony has been completed, under Fed.R.Evid. 615.  The government will further move that Special Federal Task Force Officer Ken Wojtowicz be designated as the case agent and be exempt from the exclusion order, under Fed.R.Evid. 615.

**G.**     **CONCLUSION**

The foregoing is a summary of points the government anticipates may arise at trial.  Should any legal issues arise that have not been covered in this trial brief, the government respectfully requests leave to submit such further memoranda as may be necessary.

Respectfully submitted,

A. COURTNEY COX
United States Attorney


*s/Nicole E. Gorovsky*
NICOLE E. GOROVSKY
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
(618) 628-3700
Fax:  (618) 628-3772
E-mail: Nicole.Gorovsky@usdoj.gov


*s/James A. Silver (with consent)*
JAMES A. SILVER
Trial Attorney, Child Exploitation and
Obscenity Section
Criminal Division, U.S. Department of Justice
1400 New York Avenue NW, Suite 600
Washington, DC 20005
(202) 353-2057 Telephone
(202) 514-1793 Facsimile
E-mail: james.silver@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. <u>07-CR-30179-DRH</u> |
| | ) |
| CARL A. COURTRIGHT III, | ) |
| | ) |
| Defendant. | ) |

**Certificate of Service**

I hereby certify that on February 20, 2009, I caused to be electronically filed Government's

Trial Brief with the Clerk of Court using the CM/ECF system which will send notification of such

filing(s) to the following:

Jeffrey Rosanswank: jeffrey@semocriminallaw.com

and I hereby certify that on February 20, 2009, I caused to be mailed by United States Postal

Service, the document(s) to the following non-registered participants:

None

Respectfully submitted,

A. COURTNEY COX
United States Attorney

*s/Nicole E. Gorovsky*
NICOLE E. GOROVSKY
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
(618) 628-3700
Fax:  (618) 628-3772
E-mail: Nicole.Gorovsky@usdoj.gov